# IN THE UNITED STATES DISTRICT COURT
## FOR THE MIDDLE DISTRICT OF NORTH CAROLINA

NANCY L. M.,                          )
                                      )
            Plaintiff,                )
                                      )
      v.                              )          1:22CV332
                                      )
KILOLO KIJAKAZI,                      )
Acting Commissioner of Social         )
Security,                             )
                                      )
            Defendant.                )


## MEMORANDUM OPINION AND ORDER
## OF UNITED STATES MAGISTRATE JUDGE

Plaintiff, Nancy L. M., brought this action pro se pursuant to the Social Security Act (the "Act") to obtain judicial review of a final decision of Defendant, the Acting Commissioner of Social Security (the "Commissioner"), denying Plaintiff's claim for Disability Insurance Benefits ("DIB"). (Docket Entry 3.) The Commissioner has filed the certified administrative record (Docket Entry 8 (cited herein as "Tr. __")), and both parties have moved for judgment (Docket Entry 13 (Plaintiff's Letter Motion); Docket Entry 14 (Commissioner's Motion for Judgment on the Pleadings); see also Docket Entry 15 (Commissioner's Memorandum in Support); Docket Entry 17 (Plaintiff's Reply)). Upon the written consent of the parties, the Court referred this case to the undersigned United States Magistrate Judge for disposition pursuant to 28 U.S.C. § 636(c). (See Docket Entry 16.) For the reasons that follow, the

undersigned United States Magistrate Judge will enter judgment for the Commissioner.

## I.  PROCEDURAL HISTORY

Plaintiff applied for DIB (Tr. 172-76), alleging a disability onset date of August 16, 2015 (<u>see</u> Tr. 172, 175).  Upon denial of that application initially (Tr. 101-08, 122-25) and on reconsideration (Tr. 109-21, 127-30), Plaintiff requested a hearing de novo before an Administrative Law Judge ("ALJ") (Tr. 131-32). Plaintiff (proceeding pro se) and a vocational expert ("VE") attended the hearing.  (Tr. 27-100.)  The ALJ subsequently ruled that Plaintiff did not qualify as disabled under the Act.  (Tr. 8-22.)  The Appeals Council thereafter denied Plaintiff's request for review (Tr. 1-5, 170-71), thereby making the ALJ's ruling the Commissioner's final decision for purposes of judicial review.

In rendering that decision, the ALJ made the following findings later adopted by the Commissioner:

> 1.    [Plaintiff] last met the insured status requirements of the . . . Act on September 30, 2018.
>
> 2.    [Plaintiff] did not engage in substantial gainful activity during the period from her alleged onset date of August 16, 2015 through her date last insured of September 30, 2018.
>
> 3.    Through the date last insured, [Plaintiff] had the following severe impairments: sciatica; cervical radiculopathy; chronic right shoulder pain; chronic bilateral low back pain; and spondylosis of the cervical region.
>
> . . .

2

4. Through the date last insured, [Plaintiff] did not have an impairment or combination of impairments that met or medically equaled the severity of one of the listed impairments in 20 CFR Part 404, Subpart P, Appendix 1.

. . .

5. . . . [T]hrough the date last insured, [Plaintiff] had the residual functional capacity to perform medium work . . . with the following limitations: [s]he can lift 50 pounds occasionally and 25 pounds frequently; carry 50 pounds occasionally and 25 pounds frequently. She can sit for 6 hours in an 8-hour workday, stand for 6 hours in an 8-hour workday, and walk for 6 hours in an 8-hour workday. She can push and/or pull as much as she can lift and/or carry. [Plaintiff] can also operate foot controls with the right foot frequently and operate foot controls with the left foot frequently. She can frequently reach overhead to the left and occasionally reach overhead to the right. She can climb ramps and stairs frequently and ladders, ropes and scaffolds occasionally. She can frequently balance and stoop and occasionally kneel, crouch, and crawl. [Plaintiff] can work at unprotected heights frequently and around moving mechanical parts occasionally. She can operate a motor vehicle frequently. She can also work around vibration occasionally.

. . .

6. Through the date last insured, [Plaintiff] was capable of performing past relevant work as a counter attendant, parts worker, and machine off-bearer. This work did not require the performance of work-related activities precluded by [Plaintiff]'s residual functional capacity.[1]

---

[1] As the Commissioner notes, the ALJ erred by finding that Plaintiff retained the residual functional capacity to perform her past relevant work as a parts worker as she actually performed it (see Docket Entry 15 at 9 (citing Tr. 19-20)), because the VE explained that Plaintiff could not perform her prior work as a parts worker (characterized by the Dictionary of Occupational Titles ("DOT") as "Laborer, Stores," DOT, No. 922.687-058, 1991 WL 688132 (G.P.O. 4th ed. rev. 1991)), because that job required frequent crouching (see Tr. 95-96). The ALJ's error in that regard, however, qualifies as harmless under the circumstances of this case. See generally Fisher v. Bowen, 869 F.3d 1055, 1057 (7th Cir. 1989) (observing that "[n]o principle of administrative law or common sense requires us to remand a case in quest of a perfect opinion unless there is reason to believe that the remand might lead to a different result"). The ALJ adopted the

3

. . .

In addition to past relevant work, there were other jobs that existed in significant numbers in the national economy that [Plaintiff] also could have performed, considering [Plaintiff]'s age, education, work experience, and residual functional capacity.

. . .

7.   [Plaintiff] was not under a disability, as defined in the . . . Act, at any time from August 16, 2015, the alleged onset date, through September 30, 2018, the date last insured.

(Tr. 13-22 (bold font, underscoring, and internal parenthetical citations omitted).)

## II.   DISCUSSION

Federal law "authorizes judicial review of the Social Security Commissioner's denial of social security benefits." <u>Hines v. Barnhart</u>, 453 F.3d 559, 561 (4th Cir. 2006).  However, "the scope of . . . review of [such a] decision . . . is extremely limited." <u>Frady v. Harris</u>, 646 F.2d 143, 144 (4th Cir. 1981).  Plaintiff has not established entitlement to relief under the extremely limited review standard.

### A.   Standard of Review

"[C]ourts are not to try [a Social Security] case de novo." <u>Oppenheim v. Finch</u>, 495 F.2d 396, 397 (4th Cir. 1974).  Instead, "a reviewing court must uphold the factual findings of the ALJ

---

VE's testimony that Plaintiff remained able to perform two of her other prior jobs, counter attendant and machine off-bearer (<u>see</u> Tr. 95-96), as well as six other jobs at the medium and light levels of exertion available in significant numbers in the national economy (<u>see</u> Tr. 91, 97).  (<u>See</u> Tr. 21.)

4

[underlying the denial of benefits] if they are supported by substantial evidence and were reached through application of the correct legal standard." <u>Hines</u>, 453 F.3d at 561 (internal brackets and quotation marks omitted).

"Substantial evidence means 'such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" <u>Hunter v. Sullivan</u>, 993 F.2d 31, 34 (4th Cir. 1992) (quoting <u>Richardson v. Perales</u>, 402 U.S. 389, 390 (1971)). "It consists of more than a mere scintilla of evidence but may be somewhat less than a preponderance." <u>Mastro v. Apfel</u>, 270 F.3d 171, 176 (4th Cir. 2001) (internal brackets and quotation marks omitted). "If there is evidence to justify a refusal to direct a verdict were the case before a jury, then there is substantial evidence." <u>Hunter</u>, 993 F.2d at 34 (internal quotation marks omitted).

"In reviewing for substantial evidence, the [C]ourt should not undertake to re-weigh conflicting evidence, make credibility determinations, or substitute its judgment for that of the [ALJ, as adopted by the Social Security Commissioner]." <u>Mastro</u>, 270 F.3d at 176 (internal brackets and quotation marks omitted). "Where conflicting evidence allows reasonable minds to differ as to whether a claimant is disabled, the responsibility for that decision falls on the [Social Security Commissioner] (or the ALJ)." <u>Id.</u> at 179 (internal quotation marks omitted). "The issue before [the Court], therefore, is not whether [the claimant] is disabled,

5

but whether the ALJ's finding that [the claimant] is not disabled is supported by substantial evidence and was reached based upon a correct application of the relevant law." <u>Craig v. Chater</u>, 76 F.3d 585, 589 (4th Cir. 1996).

When confronting that issue, the Court must take note that "[a] claimant for disability benefits bears the burden of proving a disability," <u>Hall v. Harris</u>, 658 F.2d 260, 264 (4th Cir. 1981), and that, in this context, "disability" means the "'inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months,'" <u>id.</u> (quoting 42 U.S.C. § 423(d)(1)(A)).[2] "To regularize the adjudicative process, the Social Security Administration [('SSA')] has . . . promulgated . . . detailed regulations incorporating longstanding medical-vocational evaluation policies that take into account a claimant's age, education, and work experience in addition to [the claimant's] medical condition." <u>Id.</u> "These regulations establish a 'sequential evaluation process' to determine whether a claimant is disabled." <u>Id.</u> (internal citations omitted).

---

[2] The Act "comprises two disability benefits programs. [DIB] . . . provides benefits to disabled persons who have contributed to the program while employed. The Supplemental Security Income Program . . . provides benefits to indigent disabled persons. The statutory definitions and the regulations . . . for determining disability governing these two programs are, in all aspects relevant here, substantively identical." <u>Craig</u>, 76 F.3d at 589 n.1 (internal citations omitted).

This sequential evaluation process ("SEP") has up to five steps: "The claimant (1) must not be engaged in 'substantial gainful activity,' i.e., currently working; and (2) must have a 'severe' impairment that (3) meets or exceeds the 'listings' of specified impairments, or is otherwise incapacitating to the extent that the claimant does not possess the residual functional capacity [('RFC')] to (4) perform [the claimant's] past work or (5) any other work." Albright v. Commissioner of Soc. Sec. Admin., 174 F.3d 473, 475 n.2 (4th Cir. 1999).[3] A finding adverse to the claimant at any of several points in the SEP forecloses an award and ends the inquiry. For example, "[t]he first step determines whether the claimant is engaged in 'substantial gainful activity.' If the claimant is working, benefits are denied. The second step determines if the claimant is 'severely' disabled. If not, benefits are denied." Bennett v. Sullivan, 917 F.2d 157, 159 (4th Cir. 1990).

On the other hand, if a claimant carries his or her burden at each of the first three steps, "the claimant is disabled." Mastro, 270 F.3d at 177. Alternatively, if a claimant clears steps one and two, but falters at step three, i.e., "[i]f a claimant's impairment is not sufficiently severe to equal or exceed a listed impairment,

---

[3] "Through the fourth step, the burden of production and proof is on the claimant. If the claimant reaches step five, the burden shifts to the [government] . . . ." Hunter, 993 F.2d at 35 (internal citations omitted).

7

the ALJ must assess the claimant's [RFC]." Id. at 179.[4] Step four then requires the ALJ to assess whether, based on that RFC, the claimant can "perform past relevant work"; if so, the claimant does not qualify as disabled. Id. at 179-80. However, if the claimant establishes an inability to return to prior work, the analysis proceeds to the fifth step, whereupon the ALJ must decide "whether the claimant is able to perform other work considering both [the RFC] and [the claimant's] vocational capabilities (age, education, and past work experience) to adjust to a new job." Hall, 658 F.2d at 264-65. If, at this step, the government cannot carry its "evidentiary burden of proving that [the claimant] remains able to work other jobs available in the community," the claimant qualifies as disabled. Hines, 453 F.3d at 567.[5]

_____

[4] "RFC is a measurement of the most a claimant can do despite [the claimant's] limitations." Hines, 453 F.3d at 562 (noting that administrative regulations require RFC to reflect claimant's "ability to do sustained work-related physical and mental activities in a work setting on a regular and continuing basis . . . [which] means 8 hours a day, for 5 days a week, or an equivalent work schedule" (internal emphasis and quotation marks omitted)). The RFC includes both a "physical exertional or strength limitation" that assesses the claimant's "ability to do sedentary, light, medium, heavy, or very heavy work," as well as "nonexertional limitations (mental, sensory, or skin impairments)." Hall, 658 F.2d at 265. "RFC is to be determined by the ALJ only after [the ALJ] considers all relevant evidence of a claimant's impairments and any related symptoms (e.g., pain)." Hines, 453 F.3d at 562-63.

[5] A claimant thus can qualify as disabled via two paths through the SEP. The first path requires resolution of the questions at steps one, two, and three in the claimant's favor, whereas, on the second path, the claimant must prevail at steps one, two, four, and five. Some short-hand judicial characterizations of the SEP appear to gloss over the fact that an adverse finding against a claimant on step three does not terminate the analysis. See, e.g., Hunter, 993 F.2d at 35 ("If the ALJ finds that a claimant has not satisfied any step of the process, review does not proceed to the next step.").

## B.  Assignments of Error

After affording Plaintiff's Complaint (Docket Entry 3), Letter Motion (Docket Entry 13), and Reply (Docket Entry 17) the liberal construction due such pro se filings, see Hill v. Braxton, 277 F.3d 701, 707 (4th Cir. 2002) (citing Haines v. Kerner, 404 U.S. 519, 520 (1972)), the Court will construe Plaintiff's assignments of error as the following:

1) the ALJ and/or Appeals Council erred by failing to obtain "new evidence that developed over the course of over one year [f]rom February 2021 to [July 15, 2022]" which showed that Plaintiff's "condition [] ha[d] gradually worsened" (Docket Entry 13 at 1; see also id. at 2; Docket Entry 3 at 1; Docket Entry 17 at 1-3, 5);

2) the ALJ erred by failing to "sen[d Plaintiff] to a Social Security Disability Doctor to be reviewed and examined" (Docket Entry 17 at 1); and

3) the ALJ erred by proceeding with the telephone hearing without allowing Plaintiff to obtain an attorney (see id. at 2-3).

Defendant contends otherwise and seeks affirmation of the ALJ's decision.  (See Docket Entry 15 at 10-21.)

### 1. Failure to Obtain New Evidence

In Plaintiff's first issue on review, she maintains that the ALJ and/or Appeals Council erred by failing to obtain "new evidence that developed over the course of over one year [f]rom February

9

2021 to [July 15, 2022,]" which showed that Plaintiff's "condition [] ha[d] gradually worsened." (Docket Entry 13 at 1; see also id. at 2; Docket Entry 3 at 1; Docket Entry 17 at 1-3, 5.) Plaintiff notes that, "[s]ince that time, more records have been established," and she "underwent major back surgery in July [2021] and "[was] still under doctor's care and in recovery." (Docket Entry 3 at 1.) In Plaintiff's view, her "[r]ecord of medical history is and still remains incorrect and updated records should be included." (Docket Entry 13 at 1.) For the following reasons, Plaintiff's assertions fail to establish error by either the ALJ or the Appeals Council.

"[T]he ALJ has a duty to explore all relevant facts and inquire into the issues necessary for adequate development of the record, and cannot rely only on the evidence submitted by the claimant when that evidence is inadequate." Cook v. Heckler, 783 F.2d 1168, 1173-74 (4th Cir. 1986) (emphasis added) (citations omitted). The ALJ discharges his duty to develop the record where "the record is adequate to make a determination regarding a disability claim." France v. Apfel, 87 F. Supp. 2d 484, 490 (D. Md. 2000); accord Kersey v. Astrue, 614 F. Supp. 2d 679, 693 (W.D. Va. 2009). Accordingly, in order to demonstrate that the ALJ failed to develop the record, a claimant must show that "evidentiary gaps" existed that prejudiced his or her rights, Blankenship v. Astrue, No. 3:11CV5, 2012 WL 259952, at *13 (S.D.W. Va. Jan. 27, 2012) (unpublished) (citing Marsh v. Harris, 632 F.2d

296, 300 (4th Cir. 1980)), and that he or she "could and would have adduced evidence that might have altered the result,'" id. (quoting Carey v. Apfel, 230 F.3d 131, 142 (5th Cir. 2000)).

Here, the ALJ asked Plaintiff at the outset of the hearing if she had reviewed the evidence in her case file, and Plaintiff confirmed that she had "receive[d her case file] by mail" but had not reviewed it. (Tr. 33.) The ALJ thereafter informed Plaintiff that a hearing officer would re-send Plaintiff her case file, and that she would have the opportunity to review the file and comment on the evidence before the ALJ issued his decision. (See id.) Plaintiff then consented to that approach, and also mentioned that she had faxed, the day prior to the hearing, records from two emergency room visits on February 10 and 20, 2021. (See Tr. 34.) The ALJ subsequently confirmed he had received those records, as well as updated records from Plaintiff's primary care provider, Old Town Immediate Care. (See id.; see also Tr. 495-520 (emergency room records for 2/10/21 and 2/20/21), 527-54 (records from Old Town Immediate Care through 2/1/21).) Following that discussion, Plaintiff agreed that the ALJ possessed all of the relevant records (see Tr. 35), and the ALJ admitted the evidence into the record without objection (see Tr. 36). At the end of her testimony, Plaintiff confirmed that "everything[ had] been covered" (Tr. 87) and made no request for the ALJ to hold the record open for the submission of further evidence (see Tr. 87-88, 98-100).

11

Under such circumstances, Plaintiff has shown neither that she requested the ALJ to obtain additional medical records, nor that the ALJ failed to fulfill any such request. More significantly, Plaintiff has simply not shown that the ALJ's alleged failure to obtain Plaintiff's updated medical records prejudiced her in any way, as she has neither identified any specific records the ALJ should have sought nor explained how the contents of those unidentified documents would have changed the outcome of Plaintiff's claim, particularly given that the relevant period in this case ended on September 30, 2018, Plaintiff's date last insured. (See Docket Entries 3, 13, 17.) That failure precludes relief. See Martin v. Astrue, 345 F. App'x 197, 201-02 (7th Cir. 2009) (holding the plaintiff did not "show that he was prejudiced by the absence of medical records [he alleged the ALJ should have obtained]," because he "did not identify or provide additional records during the proceedings before the Appeals Council," and "fail[ed] to explain how additional evidence could have led to a finding of disability"); Stahl v. Astrue, No. 2:07CV19, 2018 WL 2565895, at *6 (N.D.W. Va. Nov. 1, 2007) (unpublished) ("[T]he [c]ourt finds [the plaintiff] was not prejudiced by the ALJ's failure to obtain the [updated medical] records[, because] . . . the [plaintiff] fail[ed] to demonstrate to the [c]ourt how [the] 'updated' [records] might have reasonably changed the ALJ's determination . . . .").

12

To the extent that Plaintiff faults the Appeals Council for failing to obtain Plaintiff's updated medical records, that contention also fails. In Plaintiff's request for review to the Appeals Council dated April 3, 2021 (see Tr. 171), she provided the following statement as her "Reason for Appeal": "I am unrepresented. I do not think that the [ALJ] was fair with his decision due to disabling condition and worsening of condition with proof" (Tr. 170 (bold font omitted)). Just two days later, the Appeals Council sent Plaintiff a letter which advised her as follows:

> We have received a request for review of the [ALJ]'s action in this case.
>
> **You May Send More Information**
>
> You may send us a statement about the facts and the law in this case or additional evidence. We consider additional evidence that you show is new material and relates to the period on or before the date of the hearing decision. You must also show there is a reasonable probability that the additional evidence would change the outcome of the decision. You must show good cause for why you missed informing us about or submitting it earlier.
>
> **We Will Not Act For 25 Days**
>
> If you have more information, you must send it to us within 25 days of the date of this letter. We will not allow more time to send information except for very good reasons.
>
> . . .
>
> If we do not hear from you within 25 days, we will assume that you do not want to send us more information. We

13

<u>will then proceed with our action based on the record we</u>
<u>have</u>.

(Tr. 6 (emphasis added).)  That letter clearly advised Plaintiff,
who received a master's degree and completed the majority of her
studies towards a doctorate degree (<u>see</u> Tr. 38-39), that <u>she</u> held
the burden to supply the Appeals Council with any new and material
evidence.  So far as the record reflects, Plaintiff did not
thereafter send the Appeals Council any additional evidence or
argument and thus her attempt to impute her own omission to the
Appeals Council fails as a matter of law.[6]

In short, Plaintiff's first assignment of error does not
warrant relief.

---

[6] Plaintiff additionally requests that the Commissioner obtain Plaintiff's
updated medical records in connection with her instant action for judicial
review.  (<u>See</u> Docket Entry at 3 at 1 (asking the Commissioner to "request [her]
records that [the Commissioner] do[es] not have, as well as [Plaintiff's] recent
surgery records").)  On judicial review, this Court cannot consider new evidence
that neither the ALJ nor the Appeals Council evaluated in determining whether to
remand the case under sentence <u>four</u> of 42 U.S.C. § 405(g).  <u>See generally</u> <u>Brown</u>
<u>v. Colvin</u>, No. 7:14CV283, 2015 WL 7307320, at *6 (E.D.N.C. Oct. 27, 2015)
(unpublished) ("To the extent that . . . the additional evidence . . . remains
outside the record, . . . this evidence is appropriately treated as having been
submitted for the first time to th[e] court and therefore as being subject to
sentence <u>six</u> of 42 U.S.C. § 405(g)" (emphasis added)), <u>recommendation adopted</u>,
2015 WL 7306453 (E.D.N.C. Nov. 19, 2015) (unpublished).  Coordinately, under
sentence <u>six</u> of 42 U.S.C. § 405(g), the Court may remand a matter to the
Commissioner for the consideration of additional evidence; however, <u>Plaintiff</u>
bore the burden to proffer that evidence to this Court and to demonstrate that
such evidence qualified as "new" and "material," as well as that "good cause"
existed for not submitting the evidence to the ALJ or the Appeals Council.  42
U.S.C. § 405(g); <u>see also</u> <u>Shalala v. Schaefer</u>, 509 U.S. 292, 297 n.2 (1993)
("Sentence-six remands may be ordered . . . where new, material evidence is
adduced that was for good cause not presented before the agency." (citations
omitted)).

14

## 2. Failure to Order Consultative Examination

In Plaintiff's second assignment of error, she contends that the ALJ erred by failing to "sen[d Plaintiff] to a Social Security Disability Doctor to be reviewed and examined."  (Docket Entry 17 at 1.)  In that regard, towards the end of Plaintiff's hearing, she asked the ALJ if she could "be sent to one of the [SSA]'s doctors" (Tr. 98), and the ALJ responded as follows:

> At this point in time I'm closing the hearing.  I don't have any further need.  . . . [T]hey're not really doing that right now, is my understanding, seeing people . . . live.  And . . . not only that, I have all your updated records.  I have all your treatment records.

(Tr. 98-99.)  As explained more fully below, the ALJ did not err by denying Plaintiff's request for a consultative examination.

An ALJ has discretion in deciding whether to order a consultative examination.  See 20 C.F.R. § 404.1519a; Bishop v. Barnhart, 78 F. App'x 265, 268 (4th Cir.2003).  The ALJ must order a consultative examination "when the evidence as a whole is insufficient to allow [the ALJ] to make a determination or decision on [the] claim," 20 C.F.R. § 404.1519a(b).  Moreover, in deciding whether to order such an examination, "[the ALJ] will consider not only existing medical reports, but also the disability interview form containing [the claimant's] allegations as well as other pertinent evidence in [the claimant's] file," 20 C.F.R. § 404.1519a(a) (emphasis added).

15

Notably, the ALJ here did not find the evidence before him inadequate to determine the issue of disability (see Tr.98-99 ("I don't have any further need [for a consultative examination]. . . . I have all your updated records.")), and Plaintiff makes no argument to the contrary (see Docket Entries 3, 13, 17), arguing instead that her condition worsened years after her date last insured (see Docket Entry 13 at 1; see also id. at 2; Docket Entry 3 at 1; Docket Entry 17 at 1, 3, 5). Indeed, consistent with the ALJ's above-quoted assertion, the ALJ had before him records from Plaintiff's treating physician dating up to the month of the hearing (see Tr. 448-69, 527-54), records from hospitalizations occurring within the 15 days preceding the hearing (see Tr. 495-520), and reports of diagnostic tests, such as MRIs, CT scans, and x-rays (see Tr. 309, 311, 325-27, 333, 337, 437-40, 443, 447).

Under such circumstances, Plaintiff simply has not shown that the ALJ erred in failing to order a consultative examination, particularly where such an examination would occur years after Plaintiff's date last insured. See Drane v. Colvin, No. 1:10CV901, 2014 WL 408753, at *5 n.9 (M.D.N.C. Feb. 3, 2014) (unpublished) (rejecting the "[p]laintiff's argument that the ALJ's duty to develop the record required him to consult a physician regarding whether the [p]laintiff's back impairment met or equaled [a l]isting," where the record . . . contained

16

extensive . . . treatment notes and diagnostic studies," and the plaintiff "'d[id] not identify what [any] missing evidence would have shown; rather, []he merely speculate[d] that having [further] evidence might have produced a different result'" (quoting Scarberry v. Chater, No. 94-2000, 52 F.3d 322 (table), 1995 WL 238558, at *4 n.13 (4th Cir. Apr. 25, 1995) (unpublished) (internal quotation marks omitted))), recommendation adopted, slip op. (M.D.N.C. Feb. 26, 2014) (Eagles, J.); Cosom v. Astrue, No. 11CV294, 2012 WL 1898921, at *7 & n.5 (W.D.N.C. Feb. 23, 2012) (unpublished) (finding "there was no need to arrange for a consultative examination because the ALJ had all the information he needed to reach a decision," and further noting that, "[a]ny consultative examination would have occurred after [the p]laintiff's date last insured" and thus finding "'no indication that a consultative examination . . . significantly after the date last insured would be of any use at all, let alone be necessary to assist the ALJ'" (quoting Knipple v. Commissioner of Soc. Sec., No. 6:08CV40, 2009 WL 51317, *4 (M.D. Fla. Jan. 7, 2009) (unpublished) (internal quotation marks omitted))), recommendation adopted, 2012 WL 1898918 (W.D.N.C. May 24, 2012) (unpublished).

Put simply, Plaintiff's second issue on review does not establish a basis for remand.

17

### 3. Failure to Allow Plaintiff to Obtain Counsel

Plaintiff's third and final issue on review maintains that the ALJ erred by proceeding with the telephone hearing without allowing Plaintiff to obtain an attorney. (See Docket Entry 17 at 2-3.) Plaintiff contests the Commissioner's assertion "that Plaintiff knowingly and voluntarily waived her right to counsel at the hearing" (Docket Entry 15 at 18):

> I just received papers by certified mail of my pending case. I have not been to court and I am still waiting on a court date, as I filed an appeal in a timely manner. In the papers it is falsely stated that I was asked whether or not I wanted an attorney. This statement is false with no uncertain doubt.

(Docket Entry 17 at 2 (standard capitalization applied).) Plaintiff's contentions fall short.

To begin, the transcript of Plaintiff's administrative hearing belies her denial that the ALJ asked Plaintiff if she wanted to obtain an attorney. The following exchange took place between Plaintiff and the ALJ:

> ALJ: . . . I note that you are not represented by an attorney or other qualified individual. When we first received your case at the hearing office, we wrote you a letter advising you of your right to representation. Attached to that letter was a page entitled Important Notice, and that notice listed telephone numbers of various groups that may be able to assist you in finding legal representation. The letter also told you that there may be free legal services available to you. Did you receive that letter . . . and notice, ma'am?
>
> [PLAINTIFF]: I did receive it, yes.

18

> ALJ: Okay.  <u>Do you understand the information contained in that letter, specifically information about representation</u>?
>
> [PLAINTIFF]: <u>Yes, I do</u>.
>
> ALJ: <u>Do you want to proceed without a representative</u>?
>
> [PLAINTIFF]: <u>Yes, I do</u>.

(Tr. 32-33 (emphasis added); <u>see also</u> Tr. 133-47 (letter dated Aug. 7, 2020, from SSA's Office of Hearing Operations to Plaintiff referenced by ALJ in above-quoted exchange), 149-66 (Notice of Hearing dated Nov. 6, 2020, containing information about right to representation), 167 (Plaintiff's Acknowledgement of Receipt of Notice of Hearing dated Dec. 1, 2020).)  That discussion makes clear that Plaintiff (who, as previously noted, possesses extensive education) knowingly and intelligently waived her right to a representative at the hearing.  <u>See</u> <u>Roseberry v. Colvin</u>, No. 3:15CV4895, 2016 WL 1737121, at *13 (S.D.W. Va. May 2, 2016) (unpublished) (rejecting the pro se plaintiff's argument that ALJ failed to adequately explain right to representation, where SSA sent the plaintiff "numerous letters and pamphlets . . . explaining her right to representation," and "no evidence [existed] that [the plaintiff] did not understand her right to representation," or "that [the plaintiff] suffered from an intellectual disability that prevented her from appreciating the consequences of her decision to waive her right to representation").

Lastly, Plaintiff's Reply "request[s the] SSA to appoint [her] a lawyer" in her instant civil action for judicial review. (Docket Entry 17 at 1.) In civil cases proceeding in federal court, "[t]he court may request an attorney to represent any person unable to afford counsel," 28 U.S.C. § 1915(e)(1) (emphasis added); however, "a plaintiff does not have an absolute right to appointment of counsel," Miller v. Simmons, 814 F.2d 962, 966 (4th Cir. 1987). Instead, court assistance in obtaining counsel constitutes "a matter within the discretion of th[is ] Court. It is a privilege and not a right." Bowman v. White, 388 F.2d 756, 761 (4th Cir. 1968). In this regard, the United States Court of Appeals for the Fourth Circuit has held that a litigant "must show that his case is one with exceptional circumstances." Miller, 814 F.2d at 966 (citing Cook v. Bounds, 518 F.2d 779, 780 (4th Cir. 1975)). "The question of whether such circumstances exist in any particular case hinges on characteristics of the claim and the litigant." Whisenant v. Yuam, 739 F.2d 160, 163 (4th Cir. 1984), abrogated in part on other grounds, Mallard v. United States Dist. Ct. for S.D. of Iowa, 490 U.S. 296 (1989) (holding that Section 1915 does not authorize compulsory appointment of counsel). Specifically, "[i]f it is apparent to the district court that a pro se litigant has a colorable claim but lacks the capacity to present it, the district court should appoint counsel to assist h[er]." Gordon v. Leeke, 574 F.2d 1147, 1153 (4th Cir. 1978).

In the present case, Plaintiff has asserted that she paid the filing fee when she initiated this action in the Forsyth County Superior Court (see Docket Entry 3 at 1), after which time the Commissioner removed the action to its proper venue in this Court (see Docket Entry 1 (Notice of Removal)), and Plaintiff has neither moved the Court to proceed in forma pauperis (see Docket Entries dated May 2, 2022, to present), nor alleged that she cannot afford an attorney (see Docket Entries 3, 13, 17). Furthermore, Plaintiff possesses a master's degree and has completed the majority of her course work towards a doctorate degree (see Tr. 38-39), and she has not alleged any issues regarding her competency or ability to proceed pro se (see Docket Entries 3, 13, 17). Moreover, the instant action for judicial review under 42 U.S.C. § 405(g) will proceed on the administrative record developed before the SSA and thus does not involve discovery or trial procedures, and briefing in this matter has already concluded. Accordingly, the undersigned United States Magistrate Judge concludes that Plaintiff has not established extraordinary circumstances that warrant appointment of counsel under 28 U.S.C. § 1915(e)(1).

For the foregoing reasons, Plaintiff's third assignment of error lacks merit.

## III. CONCLUSION

Plaintiff has not established grounds for relief.

**IT IS THEREFORE ORDERED** that the Commissioner's decision finding no disability is **AFFIRMED,** that Plaintiff's Letter Motion (Docket Entry 13) is **DENIED,** that the Commissioner's Motion for Judgment on the Pleadings (Docket Entry 14) is **GRANTED.**  The undersigned United States Magistrate Judge will enter a judgment dismissing this action with prejudice contemporaneously with this Memorandum Opinion and Order.

/s/ L. Patrick Auld
**L. Patrick Auld**
**United States Magistrate Judge**

July 25, 2023

22